UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAREN F.[1],                                                   Case No. 2:22-cv-2951
    Plaintiff,                                        Litkovitz, M.J.

    vs.

COMMISSIONER OF                              **ORDER**
SOCIAL SECURITY,
    Defendant.

       Plaintiff Karen F. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11) and the Commissioner's response in opposition (Doc. 12).

**I. Procedural Background**

       On September 27, 2020, plaintiff protectively filed an application for DIB alleging disability since July 27, 2019 due to bipolar disorder, manic depressive disorder, depression, PTSD, herniated disc, arthritis, irritable bowel syndrome, anxiety, and insomnia. (Tr. 15, 242).[2] The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Regina Carpenter on February 17, 2022. (Tr. 34-90). Plaintiff and a vocational expert (VE) appeared via telephone

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.
[2] Plaintiff previously filed for benefits in March 2019, but her claims were denied initially and on reconsideration, and she did not appeal further. (Tr. 15).

and testified at the hearing, during which plaintiff amended her alleged onset date to October 1, 2020. (Tr. 48-49). On March 4, 2022, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 12-29). On June 1, 2022, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.)

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease and degenerative joint disease of the cervical spine; insomnia; bipolar disorder; generalized anxiety disorder; and post-traumatic stress disorder (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: no crawling or climbing as defined in the DOT and SCO; no more than occasional overhead reaching; no exposure to hazards such as dangerous moving machinery or unprotected heights; can understand, remember, and carry out tasks that can be learned in one month or less but no fast paced production, such as assembly line or piece meal production quotas; no more than occasional changes in work routine or work setting; no contact with the public; no more than occasional interaction with coworkers and supervisors; and once work is assigned, it should be able to be performed primarily without working in coordination with other employees.
>
> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]
>
> 7. [Plaintiff] was born [in] . . . 1973 and was 47 years old, which is defined as a younger individual age 18-49, on October 1, 2020 (20 CFR 404.1563).
>
> 8. [Plaintiff] has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[4]
>
> 11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 22, 2015, the alleged onset date, through March 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-28).

---

[3] Plaintiff's past relevant work was as a bookkeeper and an accounting clerk, both skilled, sedentary exertion jobs; a sales clerk and a customer service clerk, both semi-skilled, light exertion jobs; a property manager, a skilled, light exertion job; and an attendant in a children's institution, a semi-skilled, medium (but performed by plaintiff as light) exertion job. (Tr. 27, 84-85).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as routing clerk (106,000 jobs nationally), photocopy machine operator (8,600 jobs nationally), and marker (131,000 jobs nationally). (Tr. 27-28, 86-87).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

Plaintiff raises a single assignment of error—that the ALJ did not properly evaluate the severity of her mental health symptoms.[5] Plaintiff argues that the ALJ mischaracterized or overstated her ability to engage in the activities of daily living without accounting for plaintiff's related explanations and qualifications. The Commissioner argues in response that the ALJ reasonably evaluated not only plaintiff's ability to engage in activities of daily living but also the objective medical evidence and plaintiff's treatment history. The Commissioner also argues that the ALJ explicitly considered plaintiff's explanations related to her activities of daily living. As such, the Commissioner argues that plaintiff's assertion of error amounts to an improper request for the Court to reweigh the evidence.

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016) (rescinding and superseding SSR 96-7p). ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken

---

[5] Plaintiff discusses only the symptoms of her mental health impairments. Any argument regarding the symptoms of her physical impairments is therefore deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

>   (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing

8

credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[6]

The Court finds that the ALJ's evaluation of plaintiff's symptoms is based on substantial evidence. The ALJ considered plaintiff's activities of daily living:

> [Plaintiff] testified that she drives about three times per week, goes to the grocery store, visits with her sister, and performs chores when she is in the mood. She also testified that from early 2021 to June 2021, she cared for her brother who was ill, going to his apartment for 3-4 hours a day to take care of him, including cooking for him, taking him to appointments, washing clothes, and sweeping up. On a form submitted to the District Office, [plaintiff] reported that on a typical day, she generally does basic cooking and cleaning [Tr. 259]. She reported she is able to feed her dog, attend to her own personal care, prepare meals, do light housekeeping about two times a week (but it takes all day), drive, shop in stores, go out alone, pay bills, handle finances, eat out with her mom, spend time with others, crochet, and watch television [Tr. 259-63]. She reported she needs reminders to get a bath and to take her medications, and she does not handle stress or changes in routine well [Tr. 260, 264]. [Plaintiff] reported to a consultative examiner that she will do general cleaning, grocery shop, watch television, occasionally cook, and occasionally take walks with her husband and dog [Tr. 404]. Additionally, in the medical evidence, [plaintiff] reported caring for her brother with stage 4 cancer full[-]time for six months [Tr. 441]; and going to a bar [Tr. 865]. While somewhat limited, these activities appear inconsistent with debilitating physical or mental symptoms and, absent any objective medical findings that offer convincing support for the severity of symptoms or limiting effects she alleged, appear to support a degree of functioning that is inconsistent with her allegations.

---

[6] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context. *See, e.g.*, *Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

(Tr. 22). *See* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ also considered plaintiff's good work history notwithstanding her "lifelong history of bipolar disorder. . . ." (Tr. 25).

Plaintiff argues that the ALJ's assessment of her activities of daily living fails to take into account her testimony and other evidence showing that she had to "mentally prepare herself" to engage in these activities and sometimes could not engage in them if her mood was not sufficiently stable. (Doc. 11 at PAGEID 919-20).[7] In fact, however, the ALJ discussed plaintiff's testimony—noting in particular her reports of a long history with bipolar disorder and difficulty dealing with daily life and other people. (*See* Tr. 21). The ALJ also qualified the extent of plaintiff's ability to engage in activities of daily living, which could be tempered by plaintiff's mood, could require "reminders," and was otherwise "somewhat limited. . . ." (Tr. 22). *See* 20 C.F.R. § 404.1529(c)(3)(ii). Nevertheless, the ALJ concluded that that these limitations, understood in conjunction with the "absen[ce]" of "any objective medical findings that offer convincing support for the severity of symptoms or limiting effects" alleged by plaintiff demonstrated "a degree of functioning . . . inconsistent with [plaintiff's] allegations." (*Id.*).

Plaintiff also takes particular issue with the ALJ's consideration of plaintiff's care for her terminally ill brother for several months at the end of his life. But the Court finds no error in the ALJ's consideration of plaintiff's ability to function in the face of such an acute situational stressor. The ALJ expressly acknowledged that this experience caused "fluctuating symptoms"

---

[7] Plaintiff also argues that an October 2020 primary care office record shows that plaintiff experienced anxiety about pursuing pain management. In fact, the Court finds that the record more plausibly demonstrates the contrary: "PT is ANXIOUS TO GO TO PAIN MANAGEMENT She IS HAVING A LOT OF PAIN AND WANTS TO GO[.]" (Tr. 359).

but also that plaintiff's medication "was adjusted" accordingly. (Tr. 25, referring, e.g., to Tr. 819 (August 2021 (plaintiff reports that "[t]he medicine is doing good with what I'm going through. My brother has 3 weeks to live, but I feel like my nerves are pretty damn good."))). As discussed below, the ALJ's consideration of this and plaintiff's other daily activities was only one of several rationales for finding that plaintiff was not as limited as alleged. A "plaintiff's ability to engage in daily activities does not establish *ipso facto* that she is able to engage in gainful activity 40 hours per week[,]" *Barnhorst v. Comm'r of Soc. Sec.*, No. 1:10-cv-526, 2011 WL 3811462, at *16 (S.D. Ohio Aug. 5, 2011), *report and recommendation adopted*, 2011 WL 3812639 (S.D. Ohio Aug. 26, 2011), but "the ALJ may consider [a plaintiff]'s testimony of limitations in light of other evidence of [a plaintiff]'s ability to perform other tasks. . . ." *Simpson*, 2016 WL 74420, at *10 (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001)) (remaining citations omitted).

In terms of objective medical findings, the ALJ noted reports of normal mental status examinations. 20 C.F.R. § 404.1529(c)(3)(ii). (*See* Tr. 24, referring to primary care records at Tr. 434 (October 2020 (no reported depression, nervousness, or anxiousness and medical source observed normal mood, affect, and judgment)) and Tr. 857 (December 2021 (plaintiff reported depression, nervousness, and anxiousness but medical source observed normal mood, affect, cognition, memory, and judgment))). The ALJ noted generally that "[a]lthough [plaintiff's] mental status evaluations periodically show a manic presentation" her "psychiatric evaluations . . . did not show any significant defects." (Tr. 25).[8]

---

[8] While not directly referenced in her discussion of plaintiff's mental impairments, the ALJ elsewhere highlighted a June 2021 primary care record reflecting: "alert and oriented x3, normal memory, normal mood and affect. . . ." (Tr. 22). That record, along with the record of the follow-up visit in July 2021 (also highlighted by the ALJ at Tr. 23),

11

The ALJ acknowledged certain abnormal mental status examination findings, but she also pointed out normal observations from those same examinations. For example, while plaintiff's medication management nurse practitioner Lauryn Stone sometimes recorded elevated mood, manic presentation, and rapid speech in the second half of 2021, she also recorded that plaintiff was friendly, attentive, cooperative, and communicative with no attention, anxiety, or cognitive issues. (Tr. 25, referring to, e.g., Tr. 811, 814, and 848-49). The ALJ noted that during some visits with NP Stone, plaintiff showed no symptoms of depression, anxiety, or mania at all. (*Id.*, referring to Tr. 817 (July 2021 ("[N]o signs of depression or manic process. . . . [T]here are no signs of anxiety.")); Tr. 819 (August 2021 ("[N]o signs of either depression or mood elevation. . . . There are no signs of anxiety.")); and Tr. 851 (December 2021 (Plaintiff reports: "I'm doing a lot better. . . . I think the medicine is good. No mood swings and I've been pretty much calm. . . . I feel more positive, I'm bathing every day now.") (NP Stone records that "[f]eelings of anxiety are denied. Symptoms of depression are convincingly denied. She describes no symptoms of mania."))). *See* 20 C.F.R. § 404.1529(c)(3)(iv).

The ALJ also considered plaintiff's history of counseling since January 2019 and noted that associated records documented "situational stressors" as opposed to "significant behavior abnormalities or cognitive deficits[.]" (Tr. 24, referring to Tr. 353 (December 2020 (anger toward sister)); Tr. 410-412 (March, June, and July 2021 (stress associated with the care of her terminally ill brother)); Tr. 516-17 (August 2021 (marital issues)); Tr 862-69 (September,

---

support the ALJ's later, general observations regarding plaintiff's mental impairments. (*See* Tr. 22-23, referring to Tr. 442-43 (June 2021 (plaintiff reported depression, nervousness, and anxiousness but medical source observed normal mood, affect, cognition, memory, and judgment)) and Tr. 452-53 (July 2021 (no reported depression, nervousness, or anxiousness and medical source observed normal mood, affect, and judgment))).

November, and December 2021 (grief over brother's death, personal health concern, marital issues, conflict with sister))). *See* 20 C.F.R. §§ 404.1529(c)(3)(iii), (v).

Plaintiff lastly argues that contrary to the ALJ's conclusion, objective medical evidence is consistent with her alleged symptom severity—pointing to the assessment by consultative examiner Tawnee Tanner, Psy.D. (Tr. 402-07). Plaintiff argues that Dr. Tanner's assessment "not[ed] many of the complaints that [plaintiff] testified to" and "concluded that [plaintiff's] impairment and the symptoms borne from the same would have significantly profound effects on her abilities to perform basic aspects of work activity." (Doc. 11 at PAGEID 921). But plaintiff neither points to anything in particular in Dr. Tanner's report that is clearly inconsistent with the residual functional capacity assessment of the ALJ nor challenges the ALJ's assessment of Dr. Tanner's opinion. This leaves, in essence, plaintiff's disagreement with the ALJ's weighing of the evidence. Even where substantial evidence supports plaintiff's position, the ALJ's decision must stand "if the evidence could reasonably support the conclusion reached." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019) (alteration in original) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 390 (6th Cir. 1999)).

All of the foregoing demonstrates due consideration by the ALJ of the relevant regulatory factors. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ's determination regarding plaintiff's subjective symptoms is therefore based on substantial evidence.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 11) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED**

13

that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 5/30/2023

Karen L. Litkovitz
United States Magistrate Judge